Floyd W. Bybee, #012651
**BYBEE LAW CENTER, PLC**
90 S. Kyrene Rd., Ste. 5
Chandler, AZ 85226-4687
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Biviana Hernandez; and Agustin Orozco; <br><br> Plaintiffs, <br><br> v. <br><br> Transtyle, Inc.; Fred Sadeghi; Faramarz Sadeghi; Saba's Limo Inc.; and Sabah S. Alnassary; <br><br> Defendants. | No. <br><br><br> **COMPLAINT** <br><br><br> (Jury Trial Demanded) |

**I. INTRODUCTION**

1. Plaintiffs purchased a 2012 Cadillac Escalade ("Escalade") with the representation that the Escalade had only 88,000 actual miles. The title Plaintiffs received showed Saba's Limo Inc. as the seller. Within a few months after purchasing the Escalade, the engine failed and had to be rebuilt. Plaintiffs later learned that odometer had been rolled back by no less than 100,000 miles.

2. Plaintiffs bring this action to remedy Defendants' violations of the federal Motor Vehicle Information and Costs Savings Act, also known as the federal Odometer Act, 49 U.S.C. § 32701, *et seq.* (herein after "the Odometer Act"), and for violation of the Arizona Consumer Fraud Act (hereinafter "ACFA")

## II. JURISDICTION

3. Jurisdiction of this Court arises under 49 U.S.C. § 32710(b) and 28 U.S.C. §§ 1331 and 1337.

4. Supplemental jurisdiction exists for the pendant state law claims pursuant to 28 U.S.C. § 1367.

5. Venue lies in the Phoenix Division of the District of Arizona as Plaintiffs' claims arose from acts of the Defendants perpetrated therein.

## III. PARTIES

6. Plaintiffs Biviana Hernandez and Agustin Orozco are residents of Maricopa County, Arizona.

7. Plaintiffs are "transferees" as defined by 49 C.F.R. § 580.3.

8. Defendant Transtyle, Inc. ("Transtyle") is an Arizona corporation doing business in Arizona at 7525 E. Williams Dr., Suite A, Scottsdale, AZ 85255.

9. Defendant Fred Sadeghi is the President and the sole director of Transtyle.

10. Defendant Faramarz Sadeghi is the Secretary of Transtyle.

11. Upon information and belief, Fred and Faramarz Sadeghi control, manage, and oversee the day to day operations of Transtyle.

12. Upon information and belief, Fred and Faramarz Sadeghi control, manage, and oversee the purchase and sale of motor vehicles for Transtyle.

13. Transtyle is in the business of providing limousine and ground transportation services in the greater Phoenix area.

14. Transtyle is licensed by the Arizona Department of Transportation as a vehicle for hire business.

15. Transtyle is a "transferor" as defined by 49 C.F.R. § 580.3.

16. Defendant Saba's Limo Inc. ("Saba's") is an Arizona corporation located at 3539 E. Corona, Phoenix, Arizona 85040.

17. Defendant Sabah Alnassary is the President, CEO and sole director of Saba's.

18. Upon information and belief, Sabah Alnassary controls, manages, and oversees the day to day operations of Saba's.

19. Upon information and belief, Sabah Alnassary controls, manages, and oversees the purchase and sale of motor vehicles for Saba's Limo Inc.

20. Alnassary is a "transferor" as defined by 49 C.F.R. § 580.3.

21. Saba's is in the business of providing limousine and ground transportation services in the greater Phoenix area.

22. Saba's is licensed by the Arizona Department of Transportation as a vehicle for hire business.

23. Saba's is a "transferor" as defined by 49 C.F.R. § 580.3.

### III.  FACTUAL ALLEGATIONS

24. The Escalade was first put into service in October 2011. (*See* Exhibit

A: Arizona title dated October 25, 2011)

25. Transtyle leased the Escalade from General Electric Capital Corp. to use in its vehicles for hire business. (Exh. A)

26. On or about November 25, 2014, Transtyle purchased the Escalade from General Electric Capital Corp. (*See* Exhibit B: Arizona title dated November 25, 2014)]

27. At the time of the sale, Transtyle obtained title to the Escalade which showed the mileage to be 15 miles. (Exh. B)

28. On November 13, 2014, the Escalade was serviced with a odometer reading recorded at 185,046 miles. (*See* Exhibit C: C&R Tire and Automotive Service Invoice dated November 13, 2014)

29. By February 16, 2015, the Escalade had accumulated 197,312 miles on the odometer. (*See* Exhibit D; C&R Tire and Automotive Service Invoice dated February 16, 2015)

30. On or about December 3, 2015, Transtyle sold the Escalade to Saba's. (Exhibit B)

31. At the time of the sale, Transtyle completed the odometer disclosure certification on the back of the title showing that the Escalade had 1,000 actual miles. (Exhibit C)

32. The odometer disclosure statement Transtyle gave Saba's was false as the Escalade had far more than 1,000 miles on it at the time of transfer.

33. At the time Transtyle provided the odometer disclosure statement to Saba's, Transtyle knew or should have known that the odometer disclosure statement was false.

1  34. At the time Transtyle provided the odometer disclosure statement to Saba's, Saba's knew or should have known that the odometer disclosure statement was false.

4  35. At the time Transtyle provided the odometer disclosure statement to Saba's, the odometer on the Escalade reflected a reading far more than 1,000 miles.

7  36. On December 3, 2015, Saba's applied for and obtained an Arizona title issued in its name. (*See* Exhibit E: December 3, 2015 title)

9  37. On or about May 31, 2017, Plaintiffs purchased the Escalade from Saba's or an agent of Saba's for $16,300. (Exh. E)

11  38. The title presented to Plaintiffs at the time of the sale was in Saba's name, and had not yet been assigned to another party. (Exh. E)

13  39. The back of the title was signed by Defendant Alnassary on behalf of Saba's. (Exh. E)

15  40. The odometer disclosure provided to Plaintiffs showed 88,000 actual miles. (Exh. E)

17  41. At the time of the sale, the Escalade had far more mileage on it than 88,000 miles.

19  42. Plaintiffs believed Saba's representation that the 2012 Escalade had 88,000 actual miles when it sold the Escalade to them.

21  43. Saba's representation that the Escalade had only 88,000 miles was false.

23  44. Saba's knew its representation that the Escalade had only 88,000 miles was false.

25  45. Plaintiffs agreed to purchase the Escalade for $16,300 based on the

1 representations made by Saba's concerning the mileage of the
2 Escalade.
3 46. In the alternative, Saba's sold the Escalade to a third party, who
4 sold it to Plaintiffs.
5 47. In the alternative, and upon information and belief, Saba's sold the
6 Escalade to the third party without completing the buyer's name,
7 or the odometer disclosure on the back of the title as required by
8 law.
9 48. In the alternative, Saba's knew that by failing to complete the
10 buyer's name or provide an odometer disclosure, it would allow
11 the third party to act in its name and with apparent authority to
12 sell the Escalade as it desired.
13 49. At the time Plaintiffs purchased the Escalade, they were looking
14 for a SUV with enough room for their family of seven, and one that
15 would be reliable for long road trips.
16 50. Plaintiffs' 13 year old son belonged to a traveling soccer club which
17 participated in tournaments throughout Arizona and in other
18 states.
19 51. In November 2017, Plaintiffs used the Escalade to take their family
20 to a soccer tournament in Mesquite, Nevada.
21 52. On the return trip home, before they reached Las Vegas, the motor
22 started to have problems, including running rough, making loud
23 noises, and smoke coming out the back.
24 53. After inspection, and determining that the engine was failing,
25 Plaintiffs hired a company to tow the Escalade back to Arizona at a

|   |     |                                                                                    |
|---|-----|------------------------------------------------------------------------------------|
| 1 |     | cost of $1,200.                                                                    |
| 2 | 54. | After returning to Arizona, Plaintiffs' mechanic inspected the Escalade and determined that the engine had failed, and needed to be rebuilt or replaced at an estimated cost of $6,000. |
| 5 | 55. | Plaintiffs did not the sufficient funds to pay for the engine, and had to leave the Escalade parked for two months. |
| 7 | 56. | Finally, after saving for two months, Plaintiffs had enough money to pay for the engine to be rebuilt. |
| 9 | 57. | When the engine was torn down, Plaintiffs' mechanic showed them how multiple pistons in the engine had completely fallen into pieces. |
| 12 | 58. | The mechanic also told Plaintiffs that the Escalade had far more miles on it than was reflected on the odometer, and suggested that they look at their title to see if it was a Box C title, meaning the mileage was not actual miles. |
| 16 | 59. | Plaintiffs looked at their title and confirmed that it was not a Box C title. |
| 18 | 60. | Because of the problems encountered in their trip to Mesquite, Plaintiffs have not taken the Escalade out of town due to a fear that it will break down and leave them stranded. |
| 21 | 61. | Since the trip to Mesquite, Plaintiffs have had to miss most of their son's out-of-town soccer games as they have not had a reliable vehicle in which to travel. |
| 24 | 62. | In March or April 2018, Plaintiffs first learned that the Escalade had far more miles on it than the 88,000 represented to them on |

1     Saba's title. (Exh. E)

2   63.   Upon information and belief, Transtyle rolled back the odometer on the Escalade prior to selling it to Saba's.

4   64.   Upon information and belief, Saba's rolled back the odometer on the Escalade prior to selling it to Plaintiffs.

6   65.   Defendants knew that the mileage discrepancy would make the actual value of the Escalade worth much less than the price Plaintiffs paid for the vehicle.

9   66.   Defendants knew that a rolled back odometer would make the actual value of the Escalade worth much less than the price Plaintiffs paid for the vehicle.

12   67.   Defendants knew that a subsequent buyer like Plaintiffs would rely upon the false representations concerning the odometer disclosures on the Escalade.

15   68.   Plaintiffs in fact relied upon the affirmative misrepresentations made by Saba's in making the decision to purchase the Escalade.

17   69.   Plaintiffs did not know that the prior odometer disclosures were false, or that the odometer had been rolled back by Transtyle and / or Saba's when they purchased the Escalade.

20   70.   Plaintiffs would not have purchased the Escalade had they known that the odometer had been rolled back.

22   71.   Plaintiffs would not have purchased the Escalade had they known that it had nearly 200,000 miles on it two years prior to their purchasing the Escalade.

## V.  CAUSES OF ACTION

## CAUSE OF ACTION NO. 1

### Violation of the Federal Odometer Act

72. Plaintiffs set forth the foregoing allegations as if set forth herein.
73. The foregoing acts and omissions by Defendants violate the federal Odometer Act, 49 U.S.C. § 32701 *et seq*.
74. Each defendant violated the Odometer Act with the intent to defraud when it provided an odometer disclosure which was false.
75. Defendant Transtyle violated the Odometer Act when it altered or caused the odometer reading on the Escalade to be altered by a third party.
76. Defendant Saba's violated the Odometer Act when it altered or caused the odometer reading on the Escalade to be altered by a third party.
77. In accordance with 49 U.S.C. § 32710(a) and (b), Plaintiffs are entitled to recover from each defendant three times the amount of their actual damages sustained or $10,000.00, whichever is greater, together with reasonable attorney's fees and costs.
78. In case of default, Plaintiffs' actual damages are no less than $21,200.

## CAUSE OF ACTION NO. 2:

### Violation of Arizona Consumer Fraud Act

79. The foregoing acts and omissions of Defendants constitute violations of the Arizona Consumer Fraud Act, A.R.S. § 44-1521 et seq. (hereinafter "ACFA").

1  80. Defendant Transtyle used deception, false pretense, false promise, and misrepresentations that the Escalade had 1,000 actual miles on it when it sold the Escalade to Saba's in December 2014.

81. Defendant Saba's used deception, false pretense, false promise, and misrepresentations that the Escalade had 88,000 actual miles on it when it sold the Escalade to Plaintiffs in May 2017.

82. Defendants' conduct also violates A.R.S. § 44-1223(A)(4) which prohibits selling or offering to sell, with intent to defraud, a motor vehicle on which the odometer does not register the true mileage driven.

83. Such deception, false pretense, false promise, misrepresentation, and omission of material information waw made in connection with sale of merchandise.

84. Defendants intended that Plaintiffs rely upon such deception, false pretense, false promise, misrepresentation, and omission of material information.

85. In fact, Plaintiffs relied on such deception, false pretense, false promise, misrepresentation, and omission of material information, and agreed to purchase the Escalade.

86. Plaintiffs have suffered damages as result of reliance on the deception, false pretense, false promise, misrepresentation, and omission of material information made by Defendants.

87. In violating the ACFA, Defendants acted with an evil mind, intending to economically injure Plaintiffs or any subsequent buyer, or consciously disregarded the substantial risk that its

1  conduct would cause significant economic harm to Plaintiffs or any subsequent buyer.

88. Punitive damages are proper because a person who violates A.R.S. § 44-1223(A)(4) shall be guilty of a class 1 misdemeanor.

89. Plaintiffs are therefore entitled to recover their actual damages, plus punitive damages.

90. Plaintiffs are also entitled to recover their reasonable attorney's fees and costs pursuant to A.R.S. § 12-341.01.

91. In case of default, Plaintiffs' actual damages are no less than $21,200.

92. In case of default, Plaintiffs seeks punitive damages of $42,000.00 from Transtyle and from Saba's as an appropriate amount pursuant to the Due Process Clause of the United States Constitution.

### IV.  DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

### V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered against Defendants as follows:

 a) Statutory damages against each defendant in the amount of $10,000.00 or three times actual damages, whichever is greater;

 b) Actual damages against Defendants;

 c) Punitive damages against Defendants;

 d) Costs and reasonable attorney's fees against each defendant;

and

e) Such other relief as may be just and proper.

DATED __July 17, 2018__ .

_s/ Floyd W. Bybee_
Floyd W. Bybee, #012651
**BYBEE LAW CENTER, PLC**
90 S. Kyrene Rd., Ste. 5
Chandler, AZ 85226-4687
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiffs
