Floyd W. Bybee, #012651
BYBEE LAW CENTER, PLC
90 S. Kyrene Rd, Ste. 5
Chandler, AZ 85226-4687
Office:  (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Biviana Hernandez, *et al.*, | No.  CV18-2252-PHX-SMB |
| Plaintiffs, | |
| v. | PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY |
| Transtyle, Inc., et al., | |
| Defendants. | |

INTRODUCTION

Plaintiffs Biviana Hernandez and Agustin Orozco purchased a used 2012 Cadillac Escalade title in Defendant Saba's Limo Inc.'s ("Saba's Limo") name, who represented it had 88,000 actual miles. After the purchase, Plaintiffs learned that the Escalade had its odometer reading recorded at 286,315 miles the day after Saba's Limo took title.

Plaintiffs move for partial summary judgment for liability against Defendants Saba's Limo and Sabah S. Alnassary ("Alnassary") for violations of the federal Motor Vehicle Information and Cost Savings

Act, 49 U.S.C. §§32071-32711, also referred to as the federal Odometer
Act ("FOA" or "Act"). This motion is supported by the following
Memorandum of Points and Authorities, and Plaintiffs' separate
Statement of Facts ("SOF") filed concurrently herewith.

MEMORANDUM OR POINTS AND AUTHORITIES

I.    Factual Background

On or about May 31, 2017, Plaintiffs paid $16,300 to purchase a
used 2012 Cadillac Escalade, VIN 1GYSEGEF1CR143653 ("Escalade").
(Plaintiffs' Statement of Facts ¶ 1) (hereinafter "SOF ¶ __) The title
Plaintiffs received at the time of purchase showed Defendant Saba's
Limo as the owner. (SOF ¶ 2) The back of the title was sign by Defendant
Sabah S. Alnassary ("Alnassary") on behalf of Saba's Limo. (SOF ¶ 3)
Saba's Limo and Alnassary left the remainder of the back of the title,
including the transfer of ownership and the odometer disclosure
statement, blank. (SOF ¶ 4)

Saba's Limo acquired title to the Escalade on December 3, 2015
from Transtyle, Inc. ("Transtyle"). (SOF ¶ 5) The next day, on December
4, 2015, Saba's Limo took the Escalade to Limo Repair Phoenix for a
required Uber inspection report. (SOF ¶ 6) The Uber inspection report
reflects that the odometer reading on December 4, 2015 was recorded at
286,315 miles. (SOF ¶ 7)

At the time Plaintiffs purchased the Escalade, the odometer
reflected approximately 88,000 miles. (SOF ¶ 8) The odometer reading
was recorded on May 21, 2019, two years after purchasing the Escalade,
with a photograph taken by Plaintiff Agustin Orozco, which showed the

- 2 -

odometer read 131,629 miles. (SOF ¶ 9) Moreover, while owned by Transtyle, C&R Tire and Automotive Service serviced the Escalade on February 16, 2015, with the mileage recorded at 197,312 miles. (SOF ¶ 10) Also, while owned by Transtyle, C&R Tire and Automotive Service serviced the Escalade on November 13, 2014, with the mileage recorded at 185,046 miles.(SOF ¶ 11)

Saba's Limo did not keep a copy of the title it signed at the time it sold the Escalade. (SOF ¶ 12) Saba's Limo also did not keep any title or transfer documents concerning the Escalade. (SOF ¶ 13) In addition, Saba's Limo did not keep any service records relating to the Escalade, other than the Uber inspection record. (SOF ¶ 14)

The value of the Escalade is less than it would have been had the odometer not been altered. (SOF ¶ 15) The value of the Escalade with 88,000 actual miles is far less than the same Escalade with over 286,315 miles. (SOF ¶ 16) The value of the Escalade with a "rolled back or altered odometer" is worth far less that the same Escalade with 88,000 actual miles.  (SOF ¶ 17)

Plaintiffs would not have purchased the Escalade had they known that it had well over 286,315 miles on it. (SOF ¶ 18) Plaintiffs also would not have purchased the Escalade had they known that its odometer had been rolled back over 200,000 miles. (SOF ¶ 19)

A short time after purchasing the Escalade, the motor failed, which Plaintiffs paid $6,000 to repair. (SOF ¶ 20) As a result of the actions of Saba's Limo and Sabah Alnassary, Plaintiffs have been damaged. (SOF ¶ 21)

- 3 -

1    II.    LEGAL STANDARD.

2           a.    Summary Judgment Standard.

3           A party seeking summary judgment "bears the initial

4    responsibility of informing the district court of the basis for its motion,

5    and identifying those portions of [the record] which it believes

6    demonstrate an absence of a genuine issue of material fact." *Celotex*

7    *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is

8    appropriate if the evidence, viewed in the light most favorable to the

9    nonmoving party, shows "that there is no genuine dispute as to any

10   material fact and the movant is entitled to judgment as a matter of law."

11   Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the

12   outcome of the suit will preclude the entry of summary judgment, and

13   the disputed evidence must be "such that a reasonable jury could return

14   a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477

15   U.S. 242, 248 (1986).

16          b.    Overview of the Federal Odometer Act.

17          The FOA was passed by Congress in 1972, amended in 1976, 1986,

18   1988, 1990, and 1998, and was recodified in 1994. In passing the Act,

19   Congress found that (1) buyers of motor vehicles rely heavily on the

20   odometer reading as an index of the condition and value of a vehicle; (2)

21   buyers are entitled to rely on the odometer reading as an accurate

22   indication of the mileage of the vehicle; (3) an accurate indication of the

23   mileage assists a buyer in deciding on the safety and reliability of the

24   vehicle; and (4) motor vehicles move in, or affect, interstate and foreign

25   commerce. 49 U.S.C. § 32701(a).

- 4 -

1    Congress's intent in passing the FOA was to prevent odometer

2  tampering, and to provide other general safeguards for the protection of

3  consumers. 49 U.S.C. § 32701(b). "Regulating odometer tampering is

4  Congress's first method of achieving the Act's goals; *the second method*

5  *seeks to empower consumers by providing them with accurate information at the*

6  *time of a vehicle transfer." Bodine v. Graco Inc.*, 533 F.3d 1145, 1149 (9th Cir.

7  2018) (emphasis added). The Act, being a remedial statute, must be

8  broadly construed to effectuate its consumer protection purposes.

9  *Hughes v. Box*, 814 F.2nd 498, 501 (8th Cir. 1987).

10    The thrust of the FOA was important enough that Congress not

11  only provided for criminal and civil penalties for violations of the Act,

12  but included a private cause of action for consumers. *See* 49 U.S.C. §§

13  32709-32710.

14    The private cause of action has an independent liability
   provision: "A person that violates this chapter or a

15  regulation prescribed or order issued under this chapter,
   with intent to defraud, is liable for 3 times the actual

16  damages or $10,000, which ever is greater."

17  49 U.S.C. § 32710(a).

18    The FOA has five major substantive provisions relating to

19  odometers, three of which apply to the actions of the Defendants in this

20  case:

21    1.  The Act prohibits odometer tampering (49 U.S.C. § 32703(2));

22    2.  The Act requires, each time a vehicle is transferred, that the

23       transferor disclose the odometer reading and whether the

24       odometer reading is accurate, has exceeded its mechanical

25       limits, or is inaccurate (49 U.S.C. § 32705(a)(1)); and

1             3.  The Act prohibits false statements in conjunction with the

2                   disclosures (49 U.S.C. § 32705(a)(2)).

3    III.    Alternation of the Odometer.

4          As stated above, the FOA provides that a person may not

5  "disconnect, reset, or alter or have disconnected, rest or altered, and

6  odometer of a motor vehicle intending to change the mileage of the

7  odometer." 49 U.S.C. § 32703(2). And, although alteration of the

8  odometer must be shown, the Plaintiffs need present only circumstantial

9  and not direct evidence that the defendant did the altering." *See*, e.g.,

10  *United States v. Townsend*, 796 F.2d 158 (6th Cir. 1986) (documentary

11  evidence that cars when purchased by the defendant had a higher

12  mileage than when they were sold and testimonial evidence that

13  defendant had been personally involved in causing the alteration of

14  odometers to a lower mileage was sufficient circumstantial evidence to

15  support a conviction for altering the odometers, or causing them to be

16  altered, without direct evidence proving the actual alteration); *Winder v.*

17  *Paul Light's Buckhead Jeep Eagle Chrysler Plymouth, Inc.*, 549 S.E.2d 515

18  (Ga. Ct. App. 2001) (testimony that odometer had been altered and that

19  mileage on car was greater than shown on the odometer sufficient to

20  defeat defendant's summary judgment motion). *See* also *Delay v. Hearn*

21  *Ford*, 373 F. Supp. 791 (D.S.C. 1974).

22          In most cases, the court will infer odometer tampering when:

23      •  There has been a reduction in the odometer reading;

24      •  The vehicle has been under the sole dominion and control of the

25         transferor; and

- The transferor has not offered a plausible explanation for the change.

Exclusive control of the vehicle may be constructive as well as actual. *See State v. Biter*, 119 A.2d 894 (Del. 1955). *See* also *Gem City Motors, Inc. v. Minton*, 137 S.E.2d 522, 528 (Ga. Ct. App. 1964) ("The proof was also clear that at the time the car was traded and possession delivered to the [dealer] it had a speedometer reading of approximately 5,200 miles, and that when it was sold to Plaintiffs the speedometer reading was 900 miles, and that the defendant was the only owner of the car during such period.")

In this case, Saba's Limo purchased the subject Escalade with an odometer disclosure of 1,000 miles, which was admittedly false. C&R Tire serviced the Escalade on February 16, 2015 with 197,312 miles recorded from the odometer. Saba's Limo had the Escalade inspected the day after it took title for Uber at Limo Repairs Phoenix which recorded the mileage at 236,315. Yet, when Saba's Limo sold the Escalade to Plaintiffs more than two years later, the odometer reflected only 88,000 miles. It is therefore undisputed that the Escalade's odometer had been rolled back or altered at the time Defendants sold the Escalade. Saba's Limo also purposefully left the transfer of ownership and odometer certification blank on the back of the title. *Id.*

IV.   Transferor must provide disclosure of odometer reading and note whether the odometer reading is accurate.

The Act's disclosure requirements are central to the Act's effectiveness. Even if a transferor has not tampered with the odometer

- 7 -

1    (in fact, even if the odometer was never rolled back), a transferor may

2    violate the Act by violating the disclosure requirements. *See Ryan v.*

3    *Edwards*, 592 F.2d 756, 760 n.4 (4th Cir. 1979). Congress determined that

4    disclosures were of paramount importance because they create a paper

5    trail of the odometer reading at each transfer, facilitating investigation of

6    odometer fraud. Disclosures also provide the transferee with important

7    information, such as that the odometer reading is not accurate.

8        The Act requires that a person transferring a motor vehicle's title

9    must give the transferee a written disclosure of the mileage registered by

10   the odometer or a disclosure that the mileage is unknown if the

11   transferor knows the mileage registered by the odometer is incorrect. 49

12   U.S.C. § 32705(a).

13       Unlike other FOA provisions that apply to any person, the

14   disclosure provisions create legal duties solely for transferors of a car's

15   ownership, 49 C.F.R. pt 580. In this case, the FOA unmistakenly required

16   that Saba's Limo and Alnassary, as transferors, provide a statement

17   concerning the odometer reading, and state whether the mileage

18   showing on the odometer is the actual mileage, or that the mileage is

19   unknown. *See* 49 U.S.C. § 32705(a)(2).

20       The record is clear that Saba's Limo and Alnassary did *not* provide

21   any disclosure to Plaintiffs on the back of the title concerning the

22   odometer reading or its accuracy. The records are clear that Alnassary,

23   on behalf of Saba's Limo, did not mark the box stating the mileage was

24   unknown. Nor did he write in the odometer reading on the back of the

25   title.

- 8 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

V.      Transferors must not provide false odometer statements

The Act also prohibits transferors from giving a false statement in these disclosures. *See* 49 U.S.C. § 32705(a)(2). Here, the fact that the odometer reading itself displayed a mileage reading which was not accurate, was an affirmative representation to Plaintiffs that the mileage on the Escalade was 88,000 miles. That representation, or statement, was in fact false, and Defendants knew it.

Saba's Limo and Alnassary provided a false disclosure concerning the odometer mileage on the Escalade, and thus violated the FOA.

VI.     General Standards Concerning Proof of Intent.

As intent to defraud is a necessary element of a private right of action under the Act, Plaintiffs must allege intent and present evidence of intent. 49 U.S.C. § 32710(a); *Clayton v. McCary*, 426 F. Supp. 248 (N.D. Ohio 1976); *Pepp v. Super. Pontiac*, 412 F. Supp. 1053 (E.D. La. 1976). But Plaintiffs need only prove intent to defraud by a preponderance of the evidence, and not by clear and convincing evidence. *Landrum v. Goddard*, 921 F.2d 61 (5th Cir. 1991); *Haynes v. Manning*, 917 F.2d 450 (10th Cir. 1990), rev'd in part 717 F. Supp. 730 (D. Kan. 1989); *Crown Ford, Inc. v. Crawford*, 473 S.E.2d 554 (Ga. Ct. App. 1996). The trier of fact, or the jury in this case, should make the factual determination as to whether there is intent, and an appellate court is unlikely to overturn this decision. *See Quinn v. Cherry Lane Auto Plaza, Inc.*, 225 P.3d 266 (Wash. Ct. App. 2009).

*Intent Can Be Inferred by Actions or Inaction.*

A consumer can meet the burden of proof of intent to defraud with

little more than a showing of an Act violation, from which the court will infer an intent to defraud. *See Yazzie v. Amigo Chevrolet, Inc.*, 189 F. Supp. 2d 1245 (D.N.M. 2001); *Md. Att'y Gen. v. Dickson*, 717 F. Supp. 1090 (D. Md. 1989) (intent to defraud inferred when odometer readings changed while vehicles under the dominion of defendants, in absence of evidence to the contrary). The transferor then has the burden to rebut this presumption. Even if Saba's Limo and Alnassary plead that they had no intent to defraud, if the totality of the facts are weighed, the only conclusion would be that Defendants intended to defraud subsequent buyers of the Escalade.

The most common issue involving intent to defraud concerns transferors such as Saba's Limo, "that have represented an odometer's reading as accurate when in fact it was not accurate, and the consumer cannot prove that the dealer had actual knowledge that the odometer was inaccurate – even though the transferor should have known, and probably did know, it was inaccurate. Courts in this situation almost unanimously agree that the consumer need only prove that the transferor had constructive knowledge of the inaccuracy, that is, that it reasonably should have known its statement were false or reasonably should have taken investigative steps which would have revealed the falsity of its statement. *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275 (10th Cir. 1998); *Haynes v. Manning*, 917 F.2d 450 (10th Cir. 1990), rev'd in part 717 F. Supp. 730 (D. Kan. 1989); *Huycke v. Greenway*, 876 F.2d 94 (11th Cir. 1989) (actual knowledge not required to show intent to defraud if seller reasonably should have known that odometer is incorrect); *Tusa v.*

1   *Omaha Auto Auction, Inc.*, 712 F.2d 1248 (8th Cir. 1983); *Ryan v.*

2   *Edwards*, 592 F.2d 756, 762 (4th Cir. 1979); *Nieto v. Pence*, 578 F.2d 640

3   (5th Cir. 1978); *Mayline Enterprises, Inc. v. Milea Truck Sales Corp.*, 641

4   F. Supp. 2d 304 (S.D.N.Y. 2009); *Harris v. Jamaica Auto Repair, Inc.*, 2005

5   WL 1861730 (E.D.N.Y. Aug. 1, 2005); *Auto Sport Motors, Inc. v. Bruno*

6   *Auto Dealers, Inc.*, 721 F. Supp. 63 (S.D.N.Y. 1989) (transferor may be

7   found liable for violation of Federal Act without actual knowledge of the

8   falsity of the odometer reading, if he reasonably should have known that

9   odometer was incorrect); *Oettinger v. Lakeview Motors, Inc.*, 675 F.

10  Supp. 1488 (E.D. Va. 1988) (intent to defraud inferred when documents

11  dealer received showed discrepancy and dealer did no investigation;

12  dealer "deemed to have known all a minimum inspection would have

13  revealed"); *Williams v. Toyota of Jefferson, Inc.*, 655 F. Supp. 1081 (E.D.

14  La. 1987); *Hinson v. Eaton*, 908 S.W.2d 646 (Ark. 1995) (constructive

15  knowledge when title showed different mileage than odometer; seller

16  relied on prior owner's representation that it was a one-owner low-

17  mileage vehicle); *Smith v. Walt Bennett Ford, Inc.*, 864 S.W.2d 817 (Ark.

18  1993); *Fort Lauderdale Lincoln Mercury, Inc. v. Fallaro,* 616 So. 2d 594

19  (Fla. Dist. Ct. App. 1993); *Bill Terry's Inc. v. Atl. Motor Sales, Inc.*, 409

20  So. 2d 507 (Fla. Dist. Ct. App. 1982) (Bill Terry's violated the Act by

21  failing to indicate that the odometer had turned over; the jury properly

22  inferred that Bill Terry's had either actual or constructive knowledge of

23  the mileage which was sufficient to form the requisite intent to defraud).

24      Even the failure to complete an odometer disclosure statement can

25  be inferred to show intent to defraud. Here, it can easily be inferred from

1   Defendants' actions that they purposefully left the transfer or ownership
2   and odometer disclosure blank on the back of the title in order to feign
3   innocense when the buyer learned of the odometer discrepancy.
4   VII.  CONCLUSION
5          The material facts are not in dispute that Saba's Limo and
6   Alnassary violated the FOA. First, the records show that while owned by
7   Saba's Limo, the odometer was turned back at least 200,000 miles.
8   Second, when it sold the Escalade, it failed to complete the odometer
9   disclosure statement as required under the FOA. Third, by failing to
10  indicate that the odometer reading was not accurate, Defendants violated
11  the FOA by providing a false odometer statement, i.e. that the odometer
12  reading is accurate. Defendants cannot escape the undisputed facts
13  showing its actions and its inactions were purposefully taken in order to
14  deceive the ultimate purchaser of the Escalade into believing that the
15  odometer reading was the accurate mileage. Finally, a review of Saba's
16  Limo's and Alnassary's clearly show an intent to defraud.
17         Accordingly, Plaintiffs are entitled to judgment as a matter of law,
18  and the Court should grant summary judgment in their favor as to
19  liability.
20  / / /
21  / / /
22
23
24
25

1

2          DATED ___October 11, 2019___.

3

4                              ___s/ Floyd W. Bybee___
                               Floyd W. Bybee, #012651
5                              BYBEE LAW CENTER, PLC
                               90 S. Kyrene Rd, Ste. 5
6                              Chandler, AZ 85226-4687
                               Office: (480) 756-8822
7                              Fax: (480) 302-4186
                               floyd@bybeelaw.com
8
                               Attorney for Plaintiffs
9

10

11

12                        CERTIFICATE OF SERVICE

13          The undersigned certifies that on ___October 11, 2019___, a copy of
this document was electronically transmitted to the Clerk's Office using
14 the CM/ECF System for filing and transmittal of a Notice of Electronic
Filing to the following CM/ECF registrants:
15
                    Raeesabbas Mohamed, Esq.
16                  RM WARNER
                    8283 N. Hayden Rd, Ste 229
17                  Scottsdale, AZ 85258-2469
                    Attorney for Defendants Saba's Limo Inc. and
18                    Sabah A. Alnassary

19

20    by:  s/ Floyd W. Bybee___

21

22

23

24

25

                              - 13 -